**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VAMSIDHAR R. VURIMINDI,**<br>**Plaintiff,**<br><br>**v.**<br><br>**MHM CORRECTIONAL SERVICES, INC., CITY OF PHILADELPHIA, AND CORIZON, INC.,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 26CV3061** |

**MEMORANDUM OPINION**

Pro se plaintiff Vamsidhar Vurimindi has sued, among others, the City of Philadelphia ("the City") and MHM Correctional Services ("MHM"), pursuant to 42 U.S.C. § 1983, for violations of his Fourteenth and Eighth Amendment rights. He brings *Monell* claims against the City under multiple theories, including conditions of confinement, failure to protect, and failure to train. *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). Against MHM, he brings *Monell* claims under theories of deliberate indifference and failure to train, as well as state law claims for negligence and intentional infliction of emotional distress (IIED). *Id.* The City and MHM now move to dismiss all counts against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 12(b)(6)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are derived from Vurimundi's Amended Complaint and are taken as true on a motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

Vurimindi's claims arise from his time as a pretrial detainee, and later prisoner, in several Philadelphia-area jails: the Curran-Fromhold Correctional Facility ("Curran-Fromhold"); Philadelphia Detention Center ("the Detention Center"); and the Philadelphia Industrial

Correctional Center ("PICC").

As a pretrial detainee, Vurimindi was diagnosed—in psychiatric assessments conducted by MHM—as having a "Delusional Disorder, Persecutory Type." Once jailed, although he told prison officials that he suffered from "hyperthyroidism, paranoia, and obsessive-compulsive disorder ('OCD')," and that he had been taking several prescribed medications to manage these conditions, he was not provided with any treatment for his conditions, nor was he scheduled for any assessment by psychiatric staff.

Soon thereafter, Vurimindi began receiving threats from other inmates. He reported the threats to jail staff and requested protective custody, but that request was denied. Shortly after, he was beaten so badly by other inmates that he suffered spinal injuries and was in severe pain. Three days later, he suffered a "mild stroke and partial paralysis to the left side of his body . . . sudden weakness and loss of function on his left side." Despite multiple sick call requests and grievances detailing his symptoms, he was not assessed by a doctor until eleven days after he suffered spinal injuries and eight days after the stroke, nor did he receive the requested follow-up treatment or tests. His untreated conditions led to depression, memory loss, and poor concentration, which resulted in him "unintelligently and unknowingly waiv[ing] his jury-trial right."

Once back behind bars, he was prescribed Neurontin to mitigate his nerve pain, but his other conditions remained untreated. Despite complaining that the Neurontin left him feeling confused, dizzy, drowsy, and weak, and also left him slurring, stammering, and stuttering his words, and asking that prison health officials reassess his dosage and treatment, he was told that the jail "could not afford any other medication for nerve pain."

Meanwhile, the threats from other prisoners continued. He was again attacked and

beaten severely by another inmate, suffering a fractured nose, knocked-out teeth, torn gums, and a concussion. When taken to the prison infirmary, "[p]rison medical staff stated that they wanted to extract all of his teeth and provided no intervention to save them." He tried to save his teeth through home remedies, and never received the dental treatment he needed, leading to rotten teeth and pain.

Once he was well enough, Vurimindi gathered twenty-five witness statements from inmates and on-duty corrections personnel about the attack and his assailant which he submitted to the warden. But no action was taken and his assailant remained in the protective custody block alongside Plaintiff.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id*. at 210-11 (citation omitted). In so doing, "a court must consider only the complaint, exhibits attached to the complaint, matters of

public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

As Vurimindi is proceeding *pro se*, his allegations must be construed liberally at this stage. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The "relevant legal principle" therefore will be applied "even when the complaint has failed to name it." *Id.* "Missing details or superfluous material" similarly do not render a *pro se* complaint "unintelligible." *Garrett v. Wexford Health*, 938 F.3d 69, 93-94 (3d Cir. 2019).

## III. ANALYSIS

### A. Timeliness

Both Defendants argue that Plaintiff's claims are at least partially time-barred. While statute of limitations arguments are technically beyond the scope of a motion to dismiss, they may be brought under Fed. R. Civ. P. 12(b)(6) when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

**The City:** The City argues that any claims against it which arose before January 15, 2014, are time-barred. Plaintiff agrees. Thus, the City's Motion shall be granted on this issue.

**MHM:** For its part, MHM argues that all claims against it are time-barred. Its logic is simple: all relevant conduct occurred in 2013-14. In Pennsylvania, *Monell* claims are governed by the Commonwealth's two-year statute of limitations for personal injury cases. *See* 42 Pa. C.S. § 5524(7); *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). As personal injury claims, Vurimindi's negligence and IIED claims fall under the same provision. *See* 42 Pa. C.S. § 5524(7). Because Vurimindi brought the present case in

2026, well outside the two-year period, his claims are untimely and must be dismissed with prejudice. Vurimindi counters that his claims are timely because they relate back under Federal Rule of Civil Procedure 15(c).

Many of the Parties' arguments revolve around this case's complex procedural history. Vurimindi filed his original Complaint in the Court of Common Pleas on March 29, 2016, bringing claims against the City and other municipal entities only. On August 10, 2017, during the course of discovery, he learned that the City used MHM as a medical provider, and that the company was involved in his medical treatment while in custody. In November 2017, he filed a motion to join MHM as an additional defendant, which motion the Court of Common Pleas denied without argument or explanation. On appeal, Pennsylvania's Commonwealth Court remanded, ordering fuller examination of the joinder issue and whether Vurimindi was entitled to equitable tolling under the "discovery rule."[1] *Vurimindi v. Prothonotary of Court of Common Pleas of Philadelphia Cnty.*, 333 A.3d 1078, at **14-15 (Pa. Commw. 2025) (table decision). On remand, and after briefing on the issue, the Court of Common Pleas granted Vurimindi's Motion on April 6, 2026, and permitted him to file an amended complaint. *Vurimindi v. Prothonotary of Court of Common Pleas*, No. 160302808, Order Granting Plaintiff's Petition for Leave to Join Additional Defendants (Pa. Ct. Com. Pl. Phila. Cnty. April 6, 2026). One week later, Vurimindi filed his Amended Complaint, adding MHM as a defendant.

Whether MHM's limitations defense succeeds therefore turns on more than a comparison between the dates of the underlying conduct and the filing of the Amended Complaint. It

[1] The discovery rule states that "when the existence of an injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the period prescribed in the limitation statute, the limitation period will not begin to run until the discovery of the injury is reasonably possible." *Citsay v. Reich*, 551 A.2d 1096, 1098 (Pa. Super. 1988) (citing *Ayers v. Morgan*, 154 A.2d 788 (Pa. 1959).

implicates, among other things, the effect of the Commonwealth Court's remand, the timeliness of Vurimindi's 2017 attempt to join MHM, and the tolling effect of Pennsylvania's discovery rule. Those matters cannot be resolved from the face of the Amended Complaint alone. A statute-of-limitations defense may support dismissal under Rule 12(b)(6) "only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Here, it is not. MHM may renew its limitations defense on a fuller record, but at this stage its Motion shall be denied. *See id.*

**B. Monell Claims**

Municipalities may be found liable for their own constitutional torts, *i.e.*, acts "that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480. Generally, this refers to a municipality's policies (*i.e.*, an official "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers") or customs (*i.e.*, practices which, though "not authorized by written law . . . [are] so permanent and well settled as to [possess] the force of law."). *Monell*, 436 U.S. at 690-91. Liability may not be predicated solely on *respondeat superior*. *Id.* at 692.

While municipalities may outsource jail medical care to private parties, they retain the non-delegable duty to provide inmates with medical care. *See West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody"); *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 711 (3d Cir. 1993) ("Because the State, through incarceration, had deprived the inmates of access to medical care, it had a non-delegable constitutional duty to

provide medical care of its own. It was only the State that could provide medical care to inmates and the physician with whom the State had contracted to provide such care, thus functioned within the State system." (internal quotations and citations omitted)).

#### *i. Failure to Train*

Turning first to Vurimindi's failure to train claims against the City and MHM, for *Monell* purposes, policy and custom can encompass a city's failure to adequately train its officials. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). To succeed on such a claim, a plaintiff must show: (1) a constitutional violation; (2) that the failure to train "amounts to deliberate indifference to the rights of the persons with whom [officials] will come into contact[;]" and, (3) that the "identified deficiency in [the] training program" was closely related to the ultimate injury, "or actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotations and citations omitted). "[D]eliberate indifference" is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] actions." *Id.* Ordinarily, a pattern of "similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of [a] failure to train [claim]." *Thomas*, 749 F.3d at 223. However, sometimes the need for training is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that a single incident will suffice. *Id.* at 223 (citing *Canton*, 489 U.S. at 390 n.10).

**<u>The City</u>:** Here, Vurimindi's claim rests on a theory that the failure to train jail staff in medical care and safe custody determinations was both obvious and almost guaranteed to result in constitutional violations. Against this theory, the City offers no argument or citations. In that the Local Rules of Civil Procedure of the Eastern District of Pennsylvania require that "[e]very motion . . . shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion," its Motion will be denied on

this ground. E.D. Pa. R. Civ. P. 7.1(c).

**MHM:** Vurimindi brings a nearly identical allegation against MHM, averring that it failed to train its staff in identifying and treating serious mental health conditions, leading to his constitutional injuries. MHM argues that he cannot meet his burden, as the Amended Complaint offers no facts showing that his alleged injuries were caused by a failure to train its staff.

After careful review of the Amended Complaint, and taking Vurimindi's allegations as true, as required on a motion to dismiss, MHM is correct. His sole allegation against MHM concerns a November 2013 evaluation, in which Vurimindi told MHM personnel that he suffered from OCD and paranoia, and those officials did not provide him with any medication or treatment. As pleaded, there are no facts showing that these two events—his disclosures and their lack of action—are connected by a failure in training, as opposed to personal negligence, impossibility, or any other cause. Without facts showing causation, Vurimindi has not met his burden. *See Thomas*, 749 F.3d at 222. MHM's Motion shall therefore be granted for this claim.

***ii. Remaining Claims Against the City***

Turning to Vurimindi's remaining *Monell* claims, he alleges that the City failed to protect him from known serious dangers; held him in unconstitutional conditions of confinement; and, enforced policies and practices which resulted in the denial and delay of necessary medical care and the failure to ensure specialist referrals and follow-ups were completed. Against these allegations, the City maintains that: (1) he has globally failed to allege the policies or customs necessary to sustain his claims; and, (2) his use of fictitious John/Jane Doe defendants means he has "fail[ed] to identify an official policy maker" potentially responsible for any constitutional injuries.

If the decision to adopt a particular course of action is properly made by a municipality's authorized decisionmaker, it "represents an act of official government *'policy'* as that term is

commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (emphasis added). Thus, an official with policymaking authority "can create official policy, even by rendering a single decision." *McGreevy v. Stroup*, 413 F.3d 359, 367-68 (3d Cir. 2005).

Vurimindi argues that eight final decisionmakers made choices which constitute municipal policy. Four of them were staff at Curram-Fromhold: an intake nurse who recorded his medical and mental-health conditions and history on October 3, 2013; a security captain who, on October 9, 2013, received his reports that he was being threatened and denied his request for protective custody; a nurse or physician who evaluated him after the first assault, documenting his spinal injuries, stroke, and partial paralysis; and, the prison's Warden and Medical Director while he was detained at that facility.

Vurimindi also mentions that four employees of the Detention Center also had policymaking authority: a security captain who commanded the protective custody block on February 12, 2014; a nurse or physician who treated his injuries following the second assault; the Detention Center's Warden and Medical Director on or about February 13, 2014; and the Detention Center classification and supervision personnel who determined which inmates were placed in the protective custody block in February 2014, approved the assailant's placement there, and were supervising the block on or about February 12, 2014.

Vurimindi has not provided the names of any of these people, referring to them in his Amended Complaint as John or Jane Doe. Contrary, however, to the City's arguments, he is well within his rights to use fictitious stand-in defendants until he can find their names through the discovery process. *See Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (abrogated on other grounds) ("[O]ur cases permit the naming of fictitious defendants as stand-ins until the identities can be learned through discovery."); *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998)

("Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." (citing *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1998)).

While these Defendants are not named in his Amended Complaint, Vurimindi precisely identifies them by title and role, alleging that these specific officials were final decisionmakers within the Philadelphia detention system, and that their choices constituted municipal policy. Without contrary argument—and none is offered—their alleged choices plausibly constituted municipal policy sufficient to support his *Monell* claims. *See Pembaur v. City of Cincinnati*, 475 U.S. at 480; *McGreevy*, 413 F.3d at 367-68.

Because the City's sole argument is that Vurimindi failed to *name* the relevant final decisionmakers and otherwise offers nothing regarding whether they are authorized decisionmakers, its Motion shall be denied on this ground.[2]

***iii. Remaining Claim Against MHM***

Next, Vurimindi also brings a *Monell* claim against MHM for deliberate indifference to serious mental health needs. Such a claim requires a plaintiff to plead facts indicating that a serious medical need existed; and, that a state actor was deliberately indifferent to that need. *See Natale v. Camden Cnty. Corr. Fac.*, 318 F.3d 575, 581-82 (3d Cir. 2003). Deliberate indifference is a "subjective standard of liability consistent with recklessness" which will only be found where the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 582.

Here, while Vurimindi alleges that MHM's policies and customs indicate a "conscious

[2] Because Vurimindi's *Monell* claims survive this Motion to Dismiss on a final decisionmaker theory, there is no need to assess whether he has met his burden regarding a formal policy or custom theory. *See Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570 (3d Cir. 2002).

disregard" of his mental health needs, he does not offer any facts to support those allegations. His Amended Complaint only alleges that, in November 2013, MHM-affiliated personnel failed to provide treatment for his paranoia and OCD and contains no allegation that MHM's actions were reckless. Accordingly, MHM's Motion shall be granted on this issue.

**C. State Law Claims Against MHM**

***iv. Intentional Infliction of Emotional Distress***

Vurimindi also brings a state law claim for IIED against MHM, alleging that its knowing refusal or failure to offer mental health treatment was extreme, outrageous, and caused him severe emotional distress. In its Motion, MHM contends that he has failed to satisfy any element of his claim. To state an IIED claim, a plaintiff must plead four elements: (1) the conduct must be extreme and outrageous; (2) the defendant must have acted intentionally or recklessly; (3) the conduct must cause emotional distress; and, (4) the distress must be severe. *Bruffett v. Warner Comms., Inc.*, 692 F.2d 910, 914-15 (3d Cir. 1982).

The second element is where Vurimindi's claim stumbles. While Vurimindi did inform MHM personnel of his mental health conditions and prior prescriptions, he has not offered facts to show that the subsequent non-treatment was intentional or reckless. Because this element has not been satisfied, MHM's Motion shall be granted on this count.

***v. Negligence***

Turning finally to Vurimindi's negligence claim, he avers that MHM breached its duty of care in failing to schedule and implement prescribed follow-up referrals and failing to provide "reliable access to mental health services." According to the Amended Complaint, these "ministerial failures" caused him unnecessary pain, suffering, and delay in receiving timely treatment. MHM maintains that he has not shown it owed him a duty of care, that it breached that duty, or that he suffered harms from the alleged breach.

The elements of a negligence claim are: (1) a duty or obligation requiring the defendant to conform to a certain standard of conduct; (2) the defendant's breach of that duty by failing to conform to the standard required; (3) a causal connection between the breach and resulting injury;[3] and, (4) harms to the plaintiff. *Straw v. Fair*, 187 A.3d 966, 983 (Pa. Super. 2018).

Turning first to duty and breach, MHM's sole argument is that Vurimindi does not argue it had a duty to provide him with the "exact same mental health treatment [that] he received prior to incarceration." Without an identified duty, its logic goes, there could be no breach.

Whatever merit exists to this argument, it does not address the terms of Vurimindi's actual negligence claim. According to the Amended Complaint, MHM breached its duty to schedule follow-up specialist care and provide reliable access to mental health services. In support, Vurimindi states that, after evaluation by MHM personnel, he did not receive further assessment or treatment for his OCD and paranoia. Thus, his claim is not, as MHM contends, that he did not receive his preferred medications, but rather that MHM breached its duty by failing to provide *any* mental health treatment whatsoever. MHM offers no argument regarding these alleged duties or breaches and therefore has waived contesting them. *See* E.D. Pa. R. Civ. P. 7.1(c); *Diaz*, 2020 WL 868133, at *2; *Levy-Tatum*, 183 F. Supp.3d at 712.

Finally, MHM maintains that Vurimindi has failed to show any harm resulted from its alleged breaches. However, Vurimindi notes that three days after he was evaluated by MHM personnel, his still untreated mental health conditions had so compromised his faculties that he

[3] MHM offers no argument regarding causation, so that issue is waived. *See* E.D. Pa. R. Civ. P. 7.1(c); *Diaz v. Progressive Advanced Ins. Co.*, 2020 WL 868133, at *2 (E.D. Pa. Feb. 21, 2020) ("Moreover, [Plaintiff] failed to respond to this argument in his brief, and the Court therefore treats the argument as unopposed."); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp.3d 701, 712 (E.D. Pa. 2016) ("[B]y filing a response in opposition to [Defendant's] motion to dismiss that addressed some, but not all, of [Defendant's] arguments, [Plaintiff] abandoned those claims upon which she failed to make any substantive arguments, and those claims are therefore waived.").

"unknowingly and unintelligently" waived his jury-trial rights. MHM again offers no argument or citations that such a mental state or waiver of rights do not constitute harms. Vurimindi's negligence claim thus survives MHM's Motion to Dismiss.

An appropriate Order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**